CRONKHITE *v.* ACCIDENT INS. CO. OF NORTH AMERICA.

*(Circuit Court, D. Colorado. May 16, 1888.)*

INSURANCE — CONDITIONS OF POLICY — PAYMENT OF PREMIUMS — DILIGENCE OF ASSURED.

    C. procured an accident insurance policy, the general agent giving him until November 1st following to pay the premium. On that day, in company with T., who was a soliciting agent for the company, and who had conducted the negotiations with C., and was authorized to collect the premium, C. went to the general agent's office to make the payment, but was informed by the person who had acted as general agent at the time the policy was issued that he was no longer such agent, and that his successor was absent. Thereupon C. and T. went out, and the latter promised C. that he would return in the afternoon, and would pay the amount of the premium out of his own pocket, and look to C. for it. He did call at the office two or three times during the afternoon, but was unable to find the general agent, and the premium was not paid. *Held,* in an action on the policy, that C. had not exercised sufficient diligence to avoid a forfeiture for non-payment.

At Law. On motion to direct verdict.

This was an action on a policy of accident insurance, brought by Phœbe C. Cronkhite against the Accident Insurance Company of North America.

*Markham & Dillon* and *E. A. Clark,* for plaintiff.

*Patterson & Thomas,* for defendant.

BREWER, C. J. In reference to this case I have come to the conclusion that the motion to instruct the jury to find in favor of the defendant should be sustained, and there is no need of an argument upon the facts to the jury. The facts are these; I simply state the facts in reference to one question without any extended comment: Mr. Cronkhite, the insured, whose policy was dated the 3d of October, on the 6th of that month fell into an excavation, and received a bruise, from which time his health began to fail. He was partially disabled for some days, and then seemed to be better. Afterwards, and on the 5th day of November, he was taken down with pneumonia, and died on the 13th of that month. The contention on the one side is that, while pneumonia may have been the proximate cause, yet the bruise was the primary, and, though remote, the sole, cause of the death, in that that bruise created and produced the pneumonia, called "Traumatic Pneumonia," from its origin, which resulted in death. Now, that is a question of fact which I do not attempt to pass upon, but should leave to the jury whether the bruise was the sole cause of the death within the purview of the policy. Of course, if pneumonia is a germ disease, it was not the sole cause, for a blow does not develop or create germs. It may expose the person, by weakening the system, to their more potent action, but that is all. Doctors disagree, and I shall not pretend to determine the fact. The other is the question that I shall consider.

The policy was issued upon the 3d of October, but no money was then paid. In fact, none was ever paid to the general agents, Porter,

Hallack & Raymond, who, however, agreed to give credit to the 1st of November. The policy contains a provision that it shall not be in force until actual payment, and that no agent has authority to change the written terms of the policy. In reference to that, while there are authorities which say that that is conclusive, and that if the money is not actually paid by the insured there is no binding contract of insurance, I do not think that that is good law. The company gives the general agent blank policies, with authority to consummate the contract. The company, the principal, is at a distance, and has no voice in its consummation, it being wholly executed between the general agent and the insured. Under those circumstances the general agent may, notwithstanding the letter of the policy, give credit and deliver the policy, and it is in force during the duration of that term of credit. Such authority, however, belongs to a general agent having power to complete the contract, and does not extend to a mere subagent or soliciting agent, who is charged with only the matter of collecting premiums or soliciting insurance. Now, in this case, the negotiations were carried on entirely by Mr. Terpenning, a soliciting agent of the defendant, employed by the general agents here. He solicited the insurance, carried to the general agents the proposition that the insured would take the policy if he had a credit to the 1st of November following. That proposition was accepted by the general agents, and the policy placed in Mr. Terpenning's hands, with instructions to deliver it, and collect the premium. He had no authority to change the terms of the contract, or to make any new arrangement with the insured. His instructions were to deliver the policy, and collect the premium. Beyond that he could do nothing. Now, as I said to counsel yesterday, the bald fact stands patent and unconcealed that here the insurance company, when it has never received a dollar of premium, is asked to pay $5,000 to the beneficiary of a man who never paid such premium. Of course, when such a fact stands out conceded, the natural inquiry of every fair and reasonable man is, why should it pay? It is the duty of a judge to try to lift a case above any mere technicality, and place it upon the broad plane of absolute justice,—right and wrong between man and man; and a party should not be called upon to pay when it has in fact received nothing, unless there is some plain, clear, and positive reason upon which that demand can be rested.

Under the terms of the credit given, Mr. Cronkhite, the insured, was to pay the premium on the 1st of November; and the contention is that Mr. Terpenning and Mr. Cronkhite, on the 1st of November, went to the office of the general agents, about 1 o'clock in the afternoon, and met a gentleman there who had been at the time of the issuing of the policy such general agent, and was informed by him that he was no longer the agent, but that Mr. McGaffey was, and that they would have to see him. They waited there some time, and, Mr. Cronkhite feeling ill, they went out, and, after they had left, Mr. Cronkhite went home, telling Mr. Terpenning to go back and pay the premium, and that he would thereafter settle with him. Terpenning went back, he says, two or three times, to make payment, but failed to find the new general agent, Mr. McGaffey.

The argument is that, while payment in fact was not made, effort was made to pay it, and everything was done that reasonable diligence could demand in order to insure payment, and, having done that, the fact that no payment was made is immaterial; that he was ready to pay, and offered to pay, at a subsequent time. That contract of insurance was good or bad, was closed or continued in force, on the night of the 1st of November. What took place at that time preserved it to the next day, or else it was dead. There are three kinds of cases in which this matter of forfeiture arises, and the rule controlling in each is different. Where a party seeks to enforce a forfeiture of money which has been paid, the courts will look unfriendly towards that claim, and see that everything exists which compels the court to sustain the forfeiture. I have had quite a number of cases of that kind in the state of Nebraska. A man contracts to sell a farm for say $1,000, payable in 10 annual payments, with a provision in his contract that if the money is not paid each year, on the day named, a forfeiture of the contract and the money already paid shall result. Now, suppose the purchaser pays seven or eight years the annual payment of $100, and on the eighth or ninth year fails to make payment or tender on the very day named, and the vendor insists upon a forfeiture, and seeks to retake the land, and also retain the seven or eight hundred dollars, which the purchaser has paid. It is seen at a glance that he is seeking to enforce a harsh rule against the purchaser, and courts will not enforce the forfeiture if there is any reasonable excuse for refusing it. He is trying to rest upon the strict letter of the contract, and retake that which he had agreed to sell, and for which he had received a large part of the consideration, and also to retain the money which has been paid. Then there is an intermediate class of cases where one party contracts to sell a piece of property worth a thousand dollars for a thousand dollars, the money to be paid at a future time, and the money is not paid. Neither party stands in a position, one to the other, where a forfeiture would work any hardship. The one party still has his property, and the other his money. If the position of the property has remained unchanged, and the purchase money has not been paid, the matter does not appeal to the court strongly on either side. Then, again, as in this case, one party seeks to compel the payment of a large sum of money which was promised to be paid in consideration of a small sum,—here, the payment of $5,000 for $32.50,—and the party insists that, although he has not paid, he was ready to pay, and attempted to pay. The parties occupy a different attitude in such a case, so far as their equities are concerned, from the other cases. Now, it is conceded that the money was not paid. The claim of the beneficiary, the plaintiff here, is that the insured took reasonable means to make payment, and failed. As I said before, the insured went with Mr. Terpenning to the office, the general office, of the company here. The party who had been the general agent said he was no longer general agent, but Mr. McGaffey was, and he must be seen. Then Mr. Cronkhite went out, and told Mr. Terpenning to go back and pay the premium; and he went back, as he says, two or three times. Now, there was some diligence, there

was some effort made, to make payment. There are cases that lay down the rule as absolute that when a party, under such circumstances, receives credit as a favor, he takes all the responsibility of that favor, and he must make the payment within the time, or else the benefit of that credit is lost; that is, with this single exception. Those cases admit that if the party to whom the payment is to be made, through his intentional misconduct, prevents payment, and the party who is to make the payment is thereby unable to do so, according to the terms of the credit, he is protected as if he had made the payment. I think that the rule is better that the party must use all reasonable diligence and effort to make the payment, and unless he does that it must be held that it annuls the contract. In this case Mr. Terpenning was the man who negotiated this insurance, and was the man who took the application of Mr. Cronkhite to the general agent. He was the man who received the policy from the general agent and delivered it to Mr. Cronkhite, and he was authorized to receive the premium. He did in fact collect five dollars between the 3d of October and the 1st of November. Mr. Cronkhite paid it, and recognized that he was entitled to receive it. Mr. Terpenning stood by him on that 1st day of November, and, instead of handing the money to Terpenning, he said: "I want you to make payment, and I will settle with you." Instead of saying: "Here is the money. I want to make payment, and have this contract carried out, and this matter closed up,"—he simply left the matter to Terpenning. Counsel argue that, as Mr. Terpenning agreed to pay it, it was the same as though the money had actually been paid. I think there is a marked distinction. If the money is actually paid to the agent, in the discharge of his duties, the company can enforce collection by the strong process of the criminal law; but where the agent has simply said to the debtor, "I will pay the money for you," it cannot be enforced by any process that the criminal law affords. The company, when it gave to Mr. Terpenning the right to collect this money, never consented to take Mr. Terpenning as its debtor, and never permitted him to say, "I will be good for this premium, and will pay you the money, and the insured will settle with me." That is no payment. The money must come out of the pocket of the insured, and pass into the hands of some person who has authority to receive it from the company; because after it passes into the hands of some person authorized to receive it, an agent either special or general, the money can be collected by the company, for, if he does not turn it over, he is chargeable with embezzlement. So it stands thus that there was a party present who was entitled to receive the money, and who had received part of the money; and the insured never gave him the money, and never made any further effort to make payment, but simply said to this collector, "You make the payment, and I will settle with you." It seems to me very clear that that cannot be held as the exercise of reasonable diligence to accomplish the payment of the money. The man was immediately present who had given him the policy, who had conducted the negotiations, who had received part of the premium, and who was in fact authorized to receive it all; and he never handed

him the money, but simply said to him, "You make payment, and I will settle with you afterwards." The case is one where the insured never has paid, and where the company has never received, the money, and where there is no showing of such reasonable diligence as excuses the party from non-payment. That was my impression yesterday morning, and I studied it over in the afternoon, and examined the authorities cited by counsel this morning, and still adhere to that belief, and so shall instruct the jury to bring in a verdict for the defendant. You may prepare and submit a verdict for the jury.